UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WALLACE JAMES BEAULIEU, et al.,               CIVIL NO. 07-1535 (JRT/JSM)

     Plaintiffs,

v.                                            <u>REPORT AND RECOMMENDATION</u>

CAL R. LUDEMAN, et al.,

     Defendants.

The above matter came before the undersigned United States Magistrate Judge upon defendants' Motion to Dismiss [Docket No. 31], plaintiff's Motion to Strike [Docket No. 35], Mike O'Donnell's Request for Removal from Action [Docket No. 42] and Aaron Jones' Request for Removal from Action [Docket No. 44].

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(B) and Local Rule 72.1(c).

## I.    FACTUAL BACKGROUND

Plaintiffs Wallace Beaulieu, Lionel Yazzie, Dale Williams Sr., Larry Delaney Sr., Mike O'Donnell, Emery Eugene Bush, Aaron Jones, John Louis Beaulieu III, and Michael J. Gimmestad[1] have been committed to the Minnesota Sex Offender Program ("Program"). The actions at issue in the present action pertain to the Program at the Moose Lake Facility Prison Annex ("Annex"). <u>See</u> Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 ("Complaint"), ¶ III(A).

---

[1]    Plaintiff Dale Williams Sr.'s claims against defendants were dismissed by virtue of this Court's April 12, 2007 Order [Docket No. 13].

Plaintiffs brought the present action under 42 U.S.C. § 1983 against Cal R. Ludeman, Commissioner of the Minnesota Department of Human Services; Joan Fabian, Commissioner for the Minnesota Department of Corrections; Terry Carlson, Warden for the Correctional Facility at Moose Lake; Jack Erskine, Program Director for the Correctional Facility at Moose Lake; Dean Mooney, Site Director for the Correctional Facility at Moose Lake; Paula Johnson, Security Director for the Correctional Facility at Moose Lake; Denise Considine, North Unit Director for the Moose Lake Prison Annex; and Eric Hattenberg, South Unit Director for the Moose Lake Prison  Annex. Id., ¶ III(B). This action is being brought against defendants in both their individual and official capacities. Id. at p. 1.

Plaintiffs first alleged that defendants Commissioner Ludeman, Site Director Mooney, and Program Director Erskine (along with nondefendants Nancy Johnston, Tim Brown and Gary Grimm) retaliated against Beaulieu and Yazzie for filing a separate Complaint under § 1983 in the District of Minnesota (Civil No. 06-4807 (JMR/JSM)). Id., ¶ (IV)(1).   According to plaintiffs, the retaliation Beaulieu and Yazzie experienced included the following acts: (1) transfer to the Annex where Beaulieu and Yazzie were required to comply not only with the rules of the Program, but also the rules and polices of the Minnesota Department of Corrections ("MDOC"); (2) subjecting Beaulieu and Yazzie to a reduction in their access to religious services, attorneys, the court and visitation by family; (3) unreasonable restraint of Yazzie leading to injury; (4) unreasonable searches of Beaulieu's property, which lead to the seizure and copying of his legal papers and opening of legal mail outside of his presence; and (5) unclothed and invasive strip searches of Beaulieu and Yazzie upon their arrival at

the Annex. Id., ¶¶ (IV)(1)(A)-(E).  According to plaintiffs, this conduct violates Beaulieu's and Yazzie's Fourteenth Amendment right to file grievances, rights under the First Amendment, and constitutes punishment.  Id. ¶ (IV)(1)(A).

Plaintiffs' second claim alleges that defendants Commissioner Ludeman, Corrections Commissioner Fabian and Warden Carlson are forcing Program detainees confined at the Annex to be subjected to full-body strip searches before and after any transport from the Annex and after contact visits.  Id., ¶ (IV)(2).  In addition, they are shackled and handcuffed during any transport from the Annex.  Id.  Plaintiffs maintain that a refusal to submit to these actions results in punishment, violate their Fourth Amendment right to be free from unreasonable searches and seizures, and violate the Equal Protection Clause of the Fourteenth Amendment, because no other civilly committed detainees, save for those at the Annex, are required to submit to strip searches before and after transport or after contact visits.  Id.

Plaintiffs' third claim involves their assertion that defendants North Unit Director Considine and South Unit Director Hattenberg, at the direction of Commissioner Ludeman, Corrections Commissioner Fabian, Warden Carlson, Program Director Erskine, Site Director Mooney, and Security Director Johnson, arbitrarily seized 20-inch televisions purchased by Program detainees at the Annex, and required them to send them out at their own expense in order comply with a MDOC Policy that only 13-inch clear televisions are allowed on MDOC property.  Id., ¶ (IV)(3).  According to plaintiffs, these actions violated their Fourth Amendment right to be free from unreasonable seizures and the Equal Protection Clause of the Fourteenth Amendment, because no other civilly committed detainees are forced to send out their 20-inch televisions.  Id.  In

addition, plaintiffs claim they have a right to procedural due process pursuant to the Fourteenth Amendment prior to having their property sent away.  Id.

Plaintiffs' fourth claim is that defendants North Unit Director Considine and South Unit Director Hattenberg, acting under the color of state law and at the direction of Commissioner Ludeman, Corrections Commissioner Fabian, Warden Carlson, Program Director Erskine, Site Director Mooney, and Security Director Johnson, violated their Fourth Amendment rights to be free from unreasonable searches and their rights under the Equal Protection Clause of the Fourteenth Amendment, by directing staff to open and inspect clearly marked incoming legal mail, outside of the presence of civilly committed detainees.  Id., ¶ (IV)(4).  Plaintiffs also alleged that these actions violated federal law with respect to U.S. Mail.  Id.

Plaintiffs' fifth claim pertains to their assertion that policies created by defendants North Unit Director Considine and South Unit Director Hattenberg, at the direction of Commissioner Ludeman, Program Director Erskine, Site Director Mooney, and Security Director Johnson, restricted or denied their access to religious services and their movement in the facility, and subjected them to body-pat searches before and after movement to the Annex gym, in violation of their Fourteenth Amendment rights under the Equal Protection Clause.  Id., ¶ (IV)(5).

In their sixth claim, plaintiffs alleged that policies created by defendants North Unit Director Considine and South Unit Director Hattenberg, at the direction of Commissioner Ludeman, Program Director Erskine, Site Director Mooney, and Security Director Johnson restricted plaintiffs' access to a legal computer, required them to pay a fee before they were given access to the computer, denied them access to private

counsel, limited or restricted time allowed by them to confer with counsel over the telephone, and forced them as <u>pro</u> <u>se</u> litigants to give legal documents to Moose Lake staff if they wanted copies of those documents. <u>Id.</u>, ¶ (IV)(6). Plaintiffs maintain that these actions infringed on their right to gain meaningful access to the court in violation of the Fourteenth Amendment. <u>Id.</u>

Plaintiffs' seventh claim involves allegations that Commissioner Ludeman created a policy that resulted in the installation of a phone system that only allowed for monitored, outgoing, telephone calls at a fee in excess of 34 cents per minute. <u>Id.</u>, ¶ (IV)(7). Plaintiffs claim this policy and phone system violated their First Amendment right to telephone access. <u>Id.</u> Further, plaintiffs alleged that the phone system violated their Fourteenth Amendment rights under the Equal Protection Clause, as patients civilly committed under Minn. Stat. § 254B as mentally ill and dangerous, are allowed incoming and outgoing telephone calls and are allowed to purchase calling cards that provide telephone access for as little as 3 cents per minute. <u>Id.</u>

In their eighth claim, plaintiffs alleged that North Unit Director Considine and South Unit Director Hattenberg, at the direction of Commissioner Ludeman, Program Director Erskine, Site Director Mooney, and Security Director Johnson, violated their Fourteenth Amendment right to privacy, as plaintiffs are forced to use communal showers and toilets with no expectation of privacy, and they are double bunked in cells too small for two patients. <u>Id.</u>, ¶ (IV)(8).

Plaintiffs alleged in their ninth claim that North Unit Director Considine and South Unit Director Hattenberg, acting under the supervisory authority of Commissioner Ludeman, Program Director Erskine, Site Director Mooney, and Security Director

Johnson, deprived plaintiffs of their access to freely move around the Annex without escorts, as Program detainees are not allowed to interact or have any contact with MDOC prison inmates or guards. Id., ¶ (IV)(9).   As a result, plaintiffs are denied access to the privileges afforded to all other civilly committed inmates including daily access to the gym, access to library services, the ability to communicate with other Program detainees, and free access to outside activities. Id. According to plaintiffs, their status is similar to what the MDOC would classify as "Administrative Segregation." Id. Plaintiffs contend that they have a right to procedural due process before they are denied access to services afforded to all other civilly committed detainees, and that as they have a state-created liberty interest in their access levels, a denial of this right violates the Due Process Clause of the Fourteenth Amendment. Id.

Plaintiffs' tenth claim asserts that defendants have failed to provide plaintiffs with adequate conditions of confinement and have exposed them to potentially severe health risks. Id., ¶ (IV)(10). In particular, plaintiffs complain that the communal showers and bathrooms are only cleaned once a day and that urine and fecal matter are frequently found on the bathroom floor or toilet seats; no sanitizer readily available to disinfect the floors and toilet seats; dining room tables are not adequately sanitized prior to the services of each meal; the mops and brooms used to clean the bathrooms and showers are also used to clean cells, thereby spreading germs to their cells; and the towels, blankets and cleaning rags are washed in one unit washer and the water does not reach a temperature needed to properly sanitize them. Id. According to plaintiffs, these concerns have been repeatedly brought to the attention of Program staff, but they are ignored. Id. Plaintiffs claim the actions of the Program's staff constitutes deliberate

indifference, and that civilly committed patients have a right under the Fourteenth Amendment not to be exposed to unsanitary conditions.  <u>Id.</u>

Plaintiffs' eleventh claim states that the conditions at the Annex violate the Equal Protection Clause of the Fourteenth Amendment and constitutes punishment, as plaintiffs are subjected to a policy implemented by Commissioner Ludeman, in compliance with directives by Corrections Commissioner Fabian and Warden Carlson which mirror that of MDOC, where potential visitors are required to go through a criminal background check and obtain approval prior to visiting Program detainees housed at the Annex.  <u>Id.</u>, ¶ (IV)(11).  This process takes 30 days or more from the receipt of the application, and potential visitors are not allowed to visit if they do not pass the background check.  <u>Id.</u>  Plaintiffs maintain that this condition of confinement at the Annex is more restrictive and punitive than the requirements to which all other Program detainees are subjected and violates the Equal Protection Clause under the Fourteenth Amendment and constitutes punishment.  <u>Id.</u>

As a result of defendants' conduct, plaintiffs seek declaratory and injunctive relief in the form of an order requiring the Program to close the Annex and transfer all of its detainees back to the facilities from which they came, or ordering their release into less restrictive community-based sex offender programs. <u>Id.</u>, ¶ V.  In addition, plaintiffs seek damages from defendants, in their personal capacities, in the amount of 4.7 million dollars.  <u>Id.</u>

In lieu of an answer, defendants brought a motion to dismiss plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and (b)(6).

## II.   STANDARD OF REVIEW

Defendants have brought a claim for dismissal under Rule 12 of the Federal Rules of Civil Procedure for a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and for failure to state claim under Rule 12(b)(6).

### A.   Rule 12(b)(1) Motion

Defendants have made a facial challenge to the Court's authority to consider claims for damages against defendants for actions taken in their official capacities.  "[I]f a plaintiff lacks standing, [a] district court has no subject matter jurisdiction.  Therefore, a standing argument implicates Rule 12(b)(1)."  See Faibisch v. Univ. of Minnesota, 304 F.3d 797, 801 (8th Cir. 2002).

A motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments.  See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); see also Osborn v. United States., 918 F.2d 724, 729 n. 6 (8th Cir. 1990).  In a facial challenge to jurisdiction, such as the one before this Court, review is restricted to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss.  See Osborn, 918 F.2d at 729 n. 6.  The court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction.  See Titus, 4 F.3d at 593 (citing Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731-32 (11th Cir. 1982)); Osborn, 918 F.2d at 729 n. 6.

**B.    Rule 12(b)(6) Motion**

Pursuant to Rule 12(b)(6), defendants have moved to dismiss plaintiffs' claims for injunctive and declaratory relief against them in their official capacities, and all claims against them in their individual capacities on grounds that none of the claims state a cause of action upon which relief can be granted.  Alternatively, defendants submit that even if the Court were to find that plaintiffs have stated claims, the suit should be dismissed because defendants are entitled to qualified immunity for their actions as a matter of law.

The standard of review to be applied on a Rule 12(b)(6) motion is as follows:

> When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party.  A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief.
>
> Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity.  To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions.

Young v. City of St. Charles, Missouri, 244 F.3d 623, 627 (8th Cir. 2001)(internal citations omitted); see also DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002) (finding that to avoid dismissal under Rule 12(b)(6), the "complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claims.").  Consequently, to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is

plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. ---, ----, 127 S.Ct. 1955, 1974 (2007).   Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam)

The Court may not consider materials "outside the pleadings" on a motion to dismiss.  However, this does not mean that only the complaint itself may be reviewed. As the court noted in Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir.1999):

> When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint,' Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir.), cert. denied, __U.S.__, No.98-1848, 1999 WL 319349 (U.S. June 24, 1999), as well as materials that are 'necessarily embraced by the pleadings.' Piper Jaffray Cos. v. National Union Fire Ins. Co., 967 F. Supp. 1146, 1152 (D. Minn. 1997).  See also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d §1357, at 199 (1990)(court may consider 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint').

Therefore, documents attached to the complaint may be reviewed on a motion to dismiss, since they are part of the pleading.[2]

---

[2]      Rule 10(c) of the Federal Rules of Civil Procedure provides:   '**(c) Adoption by Reference; Exhibits.** . . . A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."

III.    **DISCUSSION**

A.      **Claims of Mike O'Donnell and Aaron Jones**

Plaintiffs Mike O'Donnell and Aaron Jones have requested that this Court dismiss their action against defendants without prejudice.   See Docket Nos. 42 and 44. Defendants have not opposed these motions.  As such, based on Rule 41(a)(2) of the Federal Rules of Civil Procedure, this Court recommends that plaintiffs O'Donnell's and Jones' request for withdrawal from this case without prejudice be granted and their claims be dismissed without prejudice. [3]

B.      **Claims for Damages Against Defendants in Their Official Capacities**

Defendants' first argument is that pursuant to the Eleventh Amendment, the Court lacks subject matter jurisdiction for any claims for damages against them for actions taken in their official capacities.   See Defendants' Memorandum in Support of their Motion to Dismiss ("Defs.' Mem.") at pp. 9-12.   In response, plaintiffs stated that they were not seeking damages against the defendants in their official capacities, but only in their individual capacities which the Eleventh Amendment does not bar.   See Plaintiffs Response to Defendants Motion to Dismiss ("Pls.' Response") at p. 1.

The Eleventh Amendment states that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state."   Under the Eleventh Amendment, federal courts do not have subject matter jurisdiction over a claim against a state for damages that has not consented to the suit.   Seminole Tribe of Florida v.

---

[3]      O'Donnell also requested dismissal of Michael J. Gimmestad's case on his behalf.  See Docket No. 17.  However, this Court will not considered this request for withdrawal on Gimmestad's behalf on the grounds that he never signed the pleading.

<u>Florida</u>, 517 U.S. 44, 64-65 (1996); <u>Roberts v. Dillon</u>, 15 F.3d 113, 115 (8th Cir. 1994).

This immunity extends to state officials as well since "a suit against a state official in his

or her official capacity is a suit against the official but rather is a suit against the official's

office [and] is no different from a suit against the State itself." <u>Will v. Michigan Dep't of

State Police</u>, 491 U.S. 58, 71 (1989).   When a lawsuit is barred by the Eleventh

Amendment, the case must be dismissed for lack of subject matter jurisdiction.

<u>Seminole Tribe</u>, 517 U.S. at 64-65.

Plaintiffs only alleged damages against defendants in their "personal capacities",

and stated in their response that they were not seeking damages from defendants in

their official capacities.  Complaint, ¶ V; Pls.' Response at p. 1.  Therefore, this portion

of defendants' motion to dismiss should be denied, as plaintiffs have not asserted

damage claim against defendants in their official capacities.[4]

### C.   Retaliation Claim

Plaintiffs Beaulieu and Yazzie alleged that defendants Commissioner Ludeman,

Site Director Mooney, and Program Director Erskine, along with others retaliated

against them for filing a separate suit under § 1983 in the District of Minnesota (Civil

No. 06-4807 (JMR/JSM)), and such conduct violated their rights under the First and

Fourteenth Amendments.   <u>See</u> Complaint, ¶ (IV)(1).   According to plaintiffs, the

---

[4]      The Court notes that the Eleventh Amendment does not bar claims for
declaratory or injunctive relief against individuals in their official capacities (<u>see
Sherbrooke Turf, Inc. v. Minnesota Dept. of Transp.</u>, 345 F.3d 964, 967 n. 1 (8th Cir.
2003) (citing <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66-67 (1989)), a request
for declaratory judgment with regards to a claimant's constitutional rights (<u>see Dakota,
Minnesota & Eastern Railroad Corp.</u>, 362 F.3d 512, 517 (8th Cir. 2004) (citation
omitted); <u>Klinger v. Director, Dept. of Revenue</u>, 281 F.3d 776, 777 (8th Cir. 2002) (per
curium)), or claims for damages against persons in their individual capacities.  <u>See</u> <u>Nix
v. Norman</u>, 879 F.2d 429, 433 n. 3 (8th Cir. 1989).

retaliation Beaulieu and Yazzie experienced included the following acts: (1) transfer to the Annex where Beaulieu and Yazzie were required to comply not only with the rules of the Program but also the rules and polices of the MDOC; (2) subjecting Beaulieu and Yazzie to a reduction in their access to religious services, attorneys, the court and visitations by family; (3) unreasonable restraint against Yazzie leading to injury; (4) unreasonable searches of Beaulieu's property, which lead to the seizure and copying of his legal papers and opening of legal mail outside of his presence; and (5) invasive and unclothed strip searches upon their arrival at the Annex. <u>Id.</u>, ¶¶ (IV)(1)(A)-(E).

To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must show:

> (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.

<u>Revels v. Vincenz</u>, 382 F.3d 870, 876 (8th Cir. 2004) (citation omitted).   An act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper." <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1206 (8th Cir. 1990) (citations omitted). For example, prison officials may not impede access to courts through retaliation, such as harassment or less favorable treatment, for inmates' litigation activities. <u>Sanders v. St. Louis County</u>, 724 F.2d 665, 666 (8th Cir. 1983) (citations omitted). "[T]he alleged manifestations of defendants' retaliation (such as less favorable treatment) need not

themselves amount to constitutional violations.  The violation lies in the intent to impede access to the courts."  <u>Madewell</u>, 909 F.2d at 1206-07 (citation omitted).

Defendants' argument for dismissal is threefold.  First, they claim that the alleged retaliation only pertained to plaintiffs Beaulieu and Yazzie's filing of the lawsuit <u>Beaulieu v. Ludeman</u>, Civ. No. 06-4807 (JMR/JSM), and therefore, the other plaintiffs cannot claim a causal connection between the filing of an action and the retaliation.  <u>See</u> Defs.' Mem. at p. 22.  This argument has no merit.  The Complaint does not assert a retaliation claim on behalf of all plaintiffs; it only seeks relief for the retaliation allegedly suffered by Beaulieu and Yazzie.

Defendants' second argument is that there is no casual action between the filing of the first lawsuit on December 7, 2006,[5] and the alleged acts of retaliation, as defendants had intended to transfer Beaulieu as early as November of 2006.  <u>Id.</u>[6]  In support of this argument, defendants refer to an attachment to the <u>Beaulieu v. Ludeman</u> Civ. No. 06-4807 (JMR/JSM) Complaint -- a November 12, 2006 letter from Beaulieu to Nancy Johnston, St. Peter Site Director -- referencing the Program's decision to transfer Beaulieu "within the next week" from St. Peter to the Moose Lake Annex.  <u>See</u> Affidavit of Kerri Stahlecker Hermann, Exhibit 12.

In opposition, plaintiffs generally argued that they were directed by the Civil Cover Sheet for an action under § 1983 "to cite caselaw or make arguments, but to

---

[5]    Defendants stated in their brief that the first suit was filed on December 7, 2007. Defs'. Mem. at p. 22.  However, the suit was filed on December 7, 2006.  <u>See</u> <u>Beaulieu v. Ludeman</u> Civ. No. 06-4807 (JMR/JSM), Docket No. 1; Affidavit of Kerri Stahlecker Hermann, Exhibit 11.

[6]    No such argument was made regarding Yazzie and the Court will not speculate on defendants' behalf as to when it made the decision to transfer him to the Annex.

<u>Briefly</u> describe our claim.  We do have information and the "Facts" that support our claim, and we will provide all of these to the Court if requested, otherwise, we will set out our case during Disclosure, as the rules direct."  Pls.' Response at p. 1 (emphasis in original).   Specifically, plaintiffs asserted in their response that the Program had Beaulieu sign a "Consent to Treatment" on November 1, 2006, which was well before the Program had planned to transfer him to the Annex, and that the plan was that he was to go back into treatment at the St. Peter site.  <u>Id.</u> at p. 2.  The plan was then changed in late December of 2006 after the Program was served with the Complaint in the first suit.  <u>Id.</u>  Beaulieu was subsequently transferred to the Annex on January 2, 2007.  <u>Id.</u>

As stated previously, this Court must "accept the allegations contained in the Complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party."   <u>Young,</u> 244 F.3d at 627.  Further, "[u]nder the notice pleading standard of the Federal Rules, plaintiffs are only required to give a 'short and plain statement' of their claims. Fed.R.Civ.P. 8(a)(2).  Thus, when reviewing the sufficiency of a complaint before receiving any evidence, our task is a limited one. 'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)."  <u>Hydrick v. Hunter</u>, 500 F.3d 978, 993 (9th Cir. 2007); <u>see also</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. ---, ----, 127 S.Ct. 1955, 1974 (2007) (concluding that to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face.")**.**

Defendants' motion to dismiss Beaulieu's claim that he was transferred in retaliation for filing the first suit must be rejected.  While defendants have pointed to a November 12, 2006 letter from Beaulieu to the St. Peter Site Director that predates the filing of the first suit and references his scheduled transfer "within the next week", the fact is, given the posture of this motion, plaintiffs cannot offer facts outside the Complaint to dispute defendants' version of the "facts."  Thus, accepting the allegations of the Complaint as true, the Court cannot and will not assume that plaintiffs cannot develop and prove any facts (such as those described in their response) to support their claim that defendants retaliated against Beaulieu for his filing of the first suit by transferring him to the Annex.[7]  Accordingly, defendants' motion to dismiss that portion of plaintiffs' retaliation claim relating to Beaulieu's transfer to the Annex should be denied.

Defendants' third argument is that Beaulieu's and Yazzie's claim that they were subjected to strip searches upon arrival at the Annex in retaliation for filing the first lawsuit on December 7, 2006, cannot state a viable claim because plaintiffs have stated in their Complaint that all civilly committed detainees are subjected to unclothed visual body searches anytime they are transported to or from the Annex.  See Defs.' Mem. at pp. 22-23 citing to Complaint, ¶ 2.  Defendants are correct.  Plaintiffs have alleged in the present action that all Program detainees confined at the Annex are subjected to full-body strip searches before and after any transfer from the Annex.  See Complaint,

---

[7]     Even if Beaulieu was aware of a decision to transfer him to the Annex as of November 12, 2006, and believed that the transfer was to occur the next week, the purpose of his letter was to ask the St. Peter Site Director to change her mind.  If indeed the transfer did not occur until sometime after the commencement of the first suit, as plaintiffs state, then the Court cannot assume as a matter of law that the transfer was a "done deal" as of November 12, 2006, and the suit played no role in the transfer.

¶ (IV)(2).   As such, Beaulieu and Yazzie cannot maintain a claim that defendants retaliated against them for filing the first lawsuit when they have affirmatively stated that the alleged retaliatory act is a standard practice applied to all Program detainees at the Annex.   As such, this portion of plaintiffs' retaliation claim should be dismissed with prejudice.

In summary, defendants' motion to dismiss Beaulieu and Yazzie's claim that they were subjected to an unclothed search upon arrival at the Annex in retaliation for the filing of their first suit, Complaint, ¶ (IV)(1)(E), should be dismissed with prejudice.  The remainder of plaintiffs' retaliation claim, Complaint, ¶¶ (IV)(1)(A)-(D), should survive.[8]

### D.   <u>Strip Search Claim</u>

Plaintiffs alleged that defendants Commissioner Ludeman, Corrections Commissioner Fabian and Warden Carlson are forcing civilly committed patients confined at the Annex to be subjected to full-body strip searches before and after any transport from the Annex and after contact visits.   <u>See</u> Complaint, ¶ (IV)(2).  Plaintiffs assert that these actions violated their Fourth Amendment right to be free from unreasonable searches and seizures and the Equal Protection Clause of the Fourteenth Amendment, because no other civilly committed detainees, save for those at the Annex, are required to submit to strip searches before and after transport or after contact visits.  <u>Id.</u>

---

[8]      Defendants presented no arguments with respect to the other alleged acts of retaliation stated in the Complaint, ¶¶ (IV)(1) (A)-(D).   Further, even if defendants ultimately established that Beaulieu's transfer was decided or implemented before his filing of the first suit, that action will have no bearing on Beaulieu's and Yazzie's other claims of retaliation which are alleged to have occurred after their arrival at the Annex.

### 1.    Fourth Amendment Claim

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons against  unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV; see also Bell v. Wolfish, 441 U.S. 520, 558 (1979) ("'The Fourth Amendment prohibits only unreasonable searches', . . .") (quoting Carroll v. United States, 267 U.S. 132, 147 (1925)).

The Eighth Circuit and several courts within the District of Minnesota have examined the standard under which the constitutional protections of civilly committed individuals should be analyzed, including the constitutional protections of civilly committed sexual offenders, and have concluded that they should be afforded the same rights as pretrial detainees. See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001) (finding that a civilly committed person's excessive force claim should be evaluated under the standard usually applied to excessive force claims brought by pretrial detainees); Stone v. Harry, Civ. No. 02-0028 (MJD/RLE) at pp. 24-27 (Report and Recommendation adopted by District Judge Michael Davis), aff'd 364 F.3d 912 (8th Cir. 2004) (finding that a civilly committed patient is not entitled to any more protections under Constitution, including  the Fourth Amendment, than those afforded to pretrial detainees); Nicolaison v. Goodno, Civil No. 04-617 (RHK/JSM) (D. Minn. June 29, 2005) (Report and Recommendation adopted by District Judge Richard Kyle in Order dated August 1, 2005) (finding that  a civilly committed sex offender, for the purpose of determining his constitutional rights, including those under the Fourth Amendment, is entitled to the same rights as that afforded to a pretrial detainee); Serna v. Goodno, No. 04-0615 (JMR/SRN), 2005 WL 1324090 at *4 n. 3 (D. Minn. June 3, 2005)

(evaluated civilly committed sex offender's Fourth Amendment search and seizure claims under the standard applicable to pretrial detainees.) (Report and Recommendation adopted by District Judge James Rosenbaum in Order dated July 7, 2005); Clouthier v. State of Minnesota, Civ. No. 04-144 (PAM/RLE) (D. Minn. January 10, 2005) at p. 20 (citation omitted) (Report and Recommendation adopted by District Judge Paul Magnuson in Order dated February 4, 2005) (finding that position of civilly committed sex offender who has made a Fourth Amendment claim relating visual body searches, is most analogous to that of a pretrial detainee); Meyer v. O'Keefe, No. 03-5251, 2004 WL 2212091 at *3 n. 3 (D. Minn. Sept. 30, 2004) (Tunheim, J) (finding that same due process standard used for pretrial detainees should be applied to a committed sex offender); DeVellion v. Milczark, Civil No. 01-617 (DWF/SRN) (D. Minn. Nov. 7, 2001) at p. 9 (finding that a civilly committed individual has the same protection, if not less, than a pretrial detainee for the purposes of due process) (Report and Recommendation adopted by District Judge Donovan Frank).

Based on this precedent, the Court will examine the balance of plaintiffs' constitutional claims, including their Fourth Amendment unreasonable search claim, under the standards applied to pretrial detainees. Under these standards, while such persons are entitled to more considerate treatment and conditions than criminals, their rights must still be balanced against the interests of the state. See Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982). "[C]onfinement in a state institution [raises] concerns similar to those raised by the housing of pretrial detainees, such as the legitimate institutional interest in the safety and security of guards and other individuals in the facility, order within the facility, and the efficiency of the facility's operations."

Andrews, 253 F.3d at 1061.  Thus, as civilly committed persons, plaintiffs' constitutional rights are not absolute and can be subject to reasonable limitation or retraction based on security concerns.  See Nicolaison v. Milczark, 26 Fed. Appx. 596, 2002 WL 15669 at *1 (8th Cir. 2002).

The United States Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979) examined the propriety of visual body cavity searches of pretrial detainees and prisoners.  In Bell, all detainees were required to expose their body cavities for a visual inspection as part of a strip search conducted after every contact visit with a person from outside of the facility.  Id. at 558.[9]  The detainees were not to be touched at any time during the visual search procedure.  Id.  The district court upheld the strip search procedure, but prohibited the body cavity searches absent probable cause to believe that the individual inmate was concealing contraband.  Id. at 558.  The Court of Appeals affirmed the decision of the district court.

The Supreme Court in Bell, in balancing the "significant and legitimate security interests" of a detention facility with the "privacy interests of the inmates", reversed the Court of Appeals and concluded that visual body cavity searches can be conducted on less than probable cause.  Id. at 560.  The Supreme Court found that in determining whether a search is reasonable for Fourth Amendment purposes, the need of the search is balanced against the invasion of personal rights that the search entails, and this balancing requires a Court to examine the scope of the search, the manner it was conducted, the justification for the search, and the place it was conducted:

---

[9]     The search policy at issue in Bell required a male inmate to lift his genitals and bend over to spread his buttocks for visual inspection and for female inmates, the vaginal and anal cavities were visually inspected.  Id. at 558, n. 39.

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Id. at 559.

Applying these standards, defendants argued that plaintiffs' Fourth Amendment claim relating to strip searches fails because the Program's policy requiring strip searches before and after transport to and from the facility and after contact visits is reasonable.  Specifically, defendants contended that the Program has valid security interests in preventing contraband from entering or leaving the facility when patients are transported to court or other appointments or during contact visits, the plaintiffs are individuals with long and violent criminal histories who are sophisticated enough to plan the smuggling of contraband or weapons in and out of the facility when they are being transported or when they have contact visits, and plaintiffs did not allege that the searches were conducted in an offending manner.  See Defs.' Mem. at pp. 31-32.

While defendants may ultimately prove that strip searches of Program detainees before and after transport to and from the facility and after contact visits is reasonable, their motion to dismiss plaintiffs' strip search claim must be denied for two reasons. First, for the purpose of a motion to dismiss, this Court cannot look beyond plaintiffs' Complaint, and as written, it states a viable claim.   Second, no facts have been developed to date, much less submitted to the Court, by any party that speak to the scope of the search, the manner it was conducted, the justification for the search, and the place it was conducted.  See generally, Shain v. Ellison, 273 F.3d 56, 62-66 (2d Cir.

2001) (holding that a blanket strip search policy at county jail violated Fourth Amendment).  Stated otherwise, this Court does not have before it any facts to assist it in evaluating the factors necessary to determine if the alleged blanket strip search policy in this case is appropriate.  As such, defendants' motion to dismiss plaintiffs' Fourth Amendment claims should be denied.[10]

### 2.    Equal Protection Claim

Plaintiffs also asserted that the strip search policy for Program detainees violates the Equal Protection Clause of the Fourteenth Amendment.  See Complaint, ¶ (IV)(2).  The Fourteenth Amendment provides in relevant part that no state shall "deny any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  In order to succeed on an equal protection claim, a claimant must prove that he has been treated differently from other similarly situated individuals, either by operation of a state law or regulation, or by a decision by a state official.  See Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000) ("In general, the Equal Protection Clause requires that state actors treat similarly situated people alike"), cert denied, 534 U.S. 816 (2001) (citing Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994), cert. denied, 513 U.S. 1185 (1995)).

The first step in an equal protection case is determining whether plaintiffs have demonstrated that they are treated differently than others who were similarly situated to them.   See Klinger, 31 F.3d at 731 (citation omitted).   "Dissimilar treatment of

---

[10]    Defendants cited in their memorandum several cases where courts found strip searches to be valid.  See Defs.' Mem. at pp. 29-32 citing to Bell, Johannes v. Alameda Co. Sheriff's Dept., 2006 WL 2504400 (N.D.Cal. August 29, 2006), and Serno.  However, consistent with this Court's conclusion, each of these cases was decided based on an evidentiary record developed for the court through a trial or on a motion for summary judgment.

dissimilarly situated persons does not violate equal protection." Id. (citation omitted). Absent a threshold showing that plaintiffs are similarly situated to those who allegedly receive favorable treatment, plaintiffs do not have a viable equal protection claim. Id. (citation omitted). "The similarly situated inquiry focuses on whether the [claimant is] similarly situated to another group for purposes of the challenged government action." Id. (citation omitted).

Assuming that plaintiffs can meet this threshold showing, then the court examines the regulation to determine if it "is rationally related to a legitimate state interest." See City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432 440 (1985); Gavin v Branstad, 122 F.3d 1081, 1090 (8th Cir. 1997) ("Because neither a fundamental right nor a suspect classification is at issue here, we apply rational basis review"), cert. denied, 524 U.S. 955 (1998).

In the present case, plaintiffs asserted that Program detainees housed in the Annex are treated differently than other civilly committed detainees housed in every other civil detention facility located throughout Minnesota in that no other civilly committed detainees are required to submit to strip searches before and after transports or contact visits.

Defendants argued that plaintiffs' Equal Protection claim fails as a matter of law, as civilly committed detainees located at the Annex are not similarly situated to civilly committed detainees located at other facilities. See Defs.' Mem. at p. 34. This Court agrees. Detainees at one facility or unit are not considered to be "similarly-situated" to detainees at other facilities or units for Equal Protection purposes. See Jackson v. Wengler, Civ. No. 07-3587 (JRT/FLN), 2007 WL 3275102 at *6 (D. Minn. Nov. 02, 2007)

(citing Klinger, 31 F.3d at 732 (inmates housed at different prisons were not similarly-situated for Equal Protection purposes, because the prisons were "different institutions with different inmates each operating with limited resources to fulfill different specific needs."); Vasquez v. Frank, 2005 WL 2740894 at *12 (W.D. Wis. October 21, 2005) (prisoner Equal Protection claim failed because "inmates at other institutions and in other units are not similarly situated to petitioner"), aff'd in part, vac'd in part, 209 Fed.Appx. 538 (7th Cir. 2006); Polakoff v. Henderson, 370 F. Supp. 690, 694-95 (D.C. Ga. 1973) ("The court knows of no statute or case stating that uniform policies are required at each and every penitentiary within the federal prison system."), aff'd, 488 F.2d 977 (5th Cir. 1974)); see also Serna, 2005 WL 1324090 at *6 (D. Minn. June 03, 2005) ("Moreover, the fact that different patients reside at different facilities precludes a finding that the patients are similarly situated.").  Given that plaintiffs, who are housed in the Annex, are not similarly situated to other civilly committed individuals housed in different facilities throughout Minnesota, their Equal Protection claim with respect to strip searches fails and should be dismissed with prejudice.[11]

---

[11]   While plaintiffs alleged that they are treated differently than other civilly committed persons, the Court notes that there are many categories of such persons in Minnesota.  For example, Minn. Stat § 253B.18, authorizes commitment for persons who are mentally ill and dangerous to the public; Minn. Stat §§ 253B.04 and 253B.09 authorize commitment for chemically dependent persons; and Minn. Stat § 253B.07 and 253B.09 authorize commitment for persons who are mentally ill or developmentally disabled. The Court can envision that the institutional concerns identified in Andrews, may vary depending upon the nature of the population that is housed at the institution. For this reason, the Court cannot conclude that all civilly committed persons are sufficiently similar for an equal protection analysis.

E.      **Handcuffs and Shackles**

Plaintiffs alleged that defendants require civilly committed individuals residing at the Annex to be shackled and handcuffed anytime they are transported from the Annex. See Complaint, ¶ IV(2).   According to plaintiffs, this seizure violates their Fourth Amendment rights.[12]   Id.  Defendants argued that given that plaintiffs pose a danger to the public and some have tried past escape attempts, the Program's alleged policy of requiring handcuffs and shackles during transport does not violate the Fourth Amendment.  See Defs.' Mem. at p. 32.  In addition, defendants argued that plaintiffs do not allege facts to sufficiently establish an excessive force claim under the Fourth Amendment.  Id.

The Fourth Amendment states that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated."  U.S. Const. amend. IV.  This right extends to civilly committed individuals.  See Hydrick, 500 F.3d at 993 (citations omitted) (finding that a committed sexually violent person shackled during transport and during visits with family and friends could assert a claim under the Fourth Amendment).  The test as to whether a governmental action is appropriate under the Fourth Amendment in this context is whether the "offending" action is reasonable given the rights of the plaintiffs and the interests of the Program.  See Bell, 441 U.S. at 559;

---

[12]      The Court does not read the Complaint to assert an Equal Protection claim with respect to defendants' use of shackles and handcuffs.  However, even if plaintiffs had asserted that the use of shackles and handcuffs violated their Equal Protection rights because other civilly committed detainees housed at other facilities around the State are not subjected to this practice when they are being transported to and from the facility, this Court would recommend dismissal of the claim for the same reason that it recommended dismissal of plaintiffs' equal protection strip search claim.  Civilly committed detainees in other facilities are not similarly situated to those housed at the Annex.

see also Youngberg, 457 U.S. at 324   (holding that a committed individual "enjoys constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests.") (emphasis added); Hydrick, 500 F.3d at 993 ("The watchword of the Fourth Amendment in every context is 'reasonableness.'"); United States v. Slater, 411 F.3d 1003, 1006 (8th Cir. 2005) ("The touchstone of the Fourth Amendment is reasonableness.").

Assuming as true plaintiffs' allegations that defendants are implementing a blanket policy mandating handcuffing and shackling during transport of Annex residents, dismissal at this stage is premature.  This Court cannot go outside of the Complaint to determine the extent of the restraints and if defendants have a valid rationale for this policy, factors which are necessary in ascertaining the policy's reasonableness.  See Hydrick, 500 F.3d at 993 (finding that a committed sexually violent person shackled during transport and during visits with family and friends asserted a claim sufficient to survive a motion to dismiss, given the analysis under the Fourth Amendment focuses on the reasonableness of the governmental action).  In fact, this Court does not even have evidence of the alleged policy before it.  As such, plaintiffs have adequately stated a Fourth Amendment claim related to defendants' use of shackles and handcuffs, and defendants motion to dismiss this claim should be denied.[13]

---

[13]   While defendants' argued that plaintiffs have not adequately pled a claim for excessive force under the Fourth Amendment, this Court does not read such a claim in the Complaint.  Regardless, although plaintiffs have a clearly established right to be free from excessive force under the Fourth Amendment's prohibition against unreasonable seizures of the person, the Court observes that there must be something beyond minor injuries to make out an excessive force claim.  See Mann v. Yarnell, 497 F.3d 822 (8th Cir. 2007); Hanig v. Lee, 415 F.3d 822 (8th Cir. 2005).  Here, the Court notes that

**F.**     <u>Seizure of 20-Inch Televisions</u>

Plaintiffs alleged that defendants North Unit Director Considine and South Unit Director Hattenberg, at the direction of Commissioner Ludeman, Corrections Commissioner Fabian, Warden Carlson, Program Director Erskine, Site Director Mooney, and Security Director Johnson, arbitrarily seized 20-inch televisions purchased by plaintiffs, and required plaintiffs to send them out at their own expense in order comply with a MDOC policy that only 13-inch clear televisions are allowed on MDOC property.  <u>Id.</u>, ¶ (IV)(3).   According to plaintiffs, these actions violated their Fourth Amendment right to be free from unreasonable seizures and the Equal Protection Clause of the Fourteenth Amendment, because no other civilly committed detainees are forced to send out their 20-inch televisions.  <u>Id.</u>  In addition, plaintiffs claim they have a right to procedural due process prior to having their property removed.  <u>Id.</u>

**1.**     <u>Fourth Amendment Claim</u>

With regards to plaintiffs' Fourth Amendment claim, defendants only argued that no "seizure" occurred for Fourth Amendment purposes, as the Program only required plaintiffs to send the televisions out of the facility.  <u>See</u> Defs.' Mem. at p. 32.  This Court disagrees.  The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated."  U.S. Const. amend. IV.  Personal property, such as televisions, are personal "effects" protected by the Fourth Amendment.  <u>See</u> <u>Pepper v. Village of Oak Park</u>, 430 F.3d 805, 809 (7th Cir. 2005) (citations omitted); <u>see also</u>

---

plaintiffs have made no allegations of physical injury as it pertained to their shackles and handcuffs claim.

Oliver v. United States, 466 U.S. 170, 177 n. 7 (1984) ("The Framers would have understood the term 'effects' to be limited to personal, rather than real, property.").

Given that a television is an "effect" protected by the Fourth Amendment, this Court must determine whether taking plaintiffs' 20-inch televisions and requiring them to send them out at their own expense constitutes a seizure. "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" Soldal v. Cook County, 506 U.S. 56, 61 (1992) (quoting United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)); see also United States v. Va Lerie, 424 F.3d 694, 701 (8th Cir. 2005) (a "seizure is defined as some meaningful interference with an individual's possessory interests in his property."). By not allowing plaintiffs to use their televisions and forcing them to send them offsite, defendants have interfered with plaintiffs' possessory rights, even if defendants do not retain the televisions.

As stated previously, plaintiffs retain constitutional rights despite their commitment, including basic Fourth Amendment rights against unreasonable seizures. See Bell, 441 U.S. at 545. "When an institutional restriction infringes a specific constitutional guarantee," – here, the Fourth Amendment right against unreasonable seizures, – "the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Id. at 546.

Here, no facts have been developed to date, much less submitted to the Court, by any party that speak to the reasons for the 20-inch television policy. As such, accepting plaintiffs allegations as true, this Court finds that plaintiffs' Complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp.

127 S.Ct. at 1974.   Defendants' motion to dismiss plaintiffs' Fourth Amendment television claim should be denied.

### 2. Procedural Due Process Claim

Plaintiffs asserted that they had a right to procedural due process prior to having their 20-inch televisions sent out from the Annex.  See Complaint, ¶ IV(3).  Defendants argued that plaintiffs' televisions do not constitute a constitutionally protected interest. See Defs.' Mem. at p. 15.

A procedural due process claim "is cognizable only if there is a recognized liberty or property interest at stake."  Johnson v. City of Minneapolis, 152 F.3d 859, 861 (8th Cir. 1998).  This Court finds that there is no liberty interest in having a 20-inch television.  Further, for a property interest to arise, a plaintiff must have more than "mere subjective expectancy."  Batra v. Board of Regents of the Univ. of Neb., 79 F.3d 717, 720 (8th Cir. 1996).  "Property interests are created by existing rules or understandings that stem from an independent source, such as state law."  Id.

The Eighth Circuit employs a two-part test to determine whether a state statute or policy is sufficient to create a constitutionally protected property interest:

> A statute, regulation, or official policy pronouncement will give rise to a protected property interest only where (1) it contains particularized substantive standards or criteria that guide the decisionmakers, and (2) it uses mandatory language requiring the decisionmakers to act in a certain way, thus limiting the official's discretion.

Jennings v. Lombardi, 70 F.3d 994, 995-996 (8th Cir. 1995) (citing Craft v. Wipf, 836 F.2d 412, 417 (8th Cir. 1987)). "Where the statute or policy is only procedural, or where it grants to the decisionmaker discretionary authority in implementing it, a protected property interest is not created."  Id.

Applying the two-part test to this statute, it is clear that plaintiffs do not have a protected property interest in their 20-inch televisions.  There is no Minnesota statute giving civilly committed individuals generally, or Program detainees, specifically, the right to possess all of their property.  Further, plaintiffs alleged in their Complaint that they were required to send out their twenty-inch televisions pursuant to a policy that only allowed thirteen-inch televisions.  <u>See</u> Complaint, ¶ (IV)(3).  While this policy may create an expectancy in the possession of televisions that are 13 inches or smaller, it does not create any expectancy in the possession of televisions that are 20 inches in size.

Plaintiffs have not established that they have a constitutionally protected property interest in the possession of their 20-inch televisions, so as to invoke procedural due process protections.  As such, defendants' motion to dismiss as it pertains to plaintiffs' television procedural due process claim should be granted and the claim dismissed with prejudice.

### 3.    Equal Protection Claim

As stated in Section III.D.2 of this Report and Recommendation, <u>supra</u>, given that the plaintiffs' housed in the Annex are not similarly situated to other civilly committed individuals housed in different faculties or units, their Equal Protection claims pertaining to their 20-inch televisions should be dismissed with prejudice.

### G.    Opening of Incoming Legal Mail Outside of Plaintiffs' Presence

Plaintiffs asserted that defendants North Unit Director Considine and  South Unit Director Hattenberg, acting under the color of state law and at the direction of Commissioner Ludeman, Corrections Commissioner Fabian, Warden Carlson, Program

Director Erskine, Site Director Mooney, and Security Director Johnson, violated their Fourth Amendment rights and their rights under the Equal Protection Clause by directing their staff to open and inspect clearly marked incoming legal mail outside of the presence of Program detainees.  <u>See</u> Complaint, ¶ (IV)(4).

### 1.     <u>Fourth Amendment Claim</u>

"Privileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner."   <u>Jensen v. Klecker</u>, 648 F.2d 1179, 1182 (8th Cir. 1981) (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 576-77 (1974)); <u>see also</u> <u>Travis v. Norris</u>, 805 F.2d 806, 809 n. 1 (8th Cir. 1986) (citations omitted) ("An inmate's privileged legal mail may be opened in the inmate's presence to inspect for contraband."); <u>Thomsen v. Ross</u> 368 F.Supp.2d 961, 974 (D. Minn. 2005) ("A jailer who opens a prisoner's legal mail outside of the prisoner's presence may violate a prisoner's constitutional rights.") (citations omitted). "Claims based on the opening of a prisoner's legal mail may be analyzed as violations of either the Sixth Amendment right to counsel, or the Fourteenth Amendment right to court access."   <u>Thomsen</u>, 368 F. Supp.2d at 974 (citing <u>Wolff</u>, 418 U.S. at 576).

In this case, plaintiffs did not bring their mail claim under Six Amendment. Further, while they did assert an Equal Protection claim under the Fourteenth Amendment, they did not assert a claim that they were denied access to the courts under the Fourteenth Amendment.   Instead, plaintiffs alleged a violation of the Fourth Amendment.  As such defendants' motion to dismiss should be granted with regards to

plaintiffs' Fourth Amendment claim and the claim should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### 2. Equal Protection Claim

As stated in Section III.D.2 of this Report and Recommendation, <u>supra</u>, given that the plaintiffs housed in the Annex are not similarly situated to other civilly committed individuals housed in different facilities around Minnesota, their Equal Protection claims pertaining to defendants opening their legal mail should be dismissed with prejudice.

### H. Access to Religious Services, Restricted Movement and Body Pat Searches

Plaintiffs' asserted that policies created by defendants North Unit Director Considine and South Unit Director Hattenberg, at the direction of Commissioner Ludeman, Program Director Erskine, Site Director Mooney, and Security Director Johnson, restricted or denied their access to religious services, restricted their movement in the facility, and subjected them to body-pat searches before and after movement to the MDOC gym, all in violation of their Fourteenth Amendment rights under the Equal Protection Clause.  <u>See</u> Complaint, ¶ (IV)(5).

As stated in Section III.D.2 of this Report and Recommendation, <u>supra</u>, given that the plaintiffs' housed in the Annex are not similarly situated to other civilly committed individuals housed in different facilities located throughout Minnesota, their Equal Protection claims pertaining to access to religious services, restricted movement and body pat searches should be dismissed with prejudice.

### I. Access to the Courts Claim

Plaintiffs maintain that defendants infringed on their right to gain meaningful access to the court in violation of the Fourteenth Amendment by restricting their access

to a legal computer, requiring them to pay for access before they were allowed to use the computer, denying them access to private counsel, limiting or restricting time allowed by them to confer with counsel over the telephone, and forcing them, as pro se litigants, to give Moose Lake staff legal documents if they wanted copies of those documents made. See Complaint, ¶ (IV)(6).

Under the First Amendment, the freedom to petition includes the right of access to courts. See BE & K Const. Co. v. N.L.R.B., 536 U.S. 516, 525 (2002) (citation omitted). This Court notes that "[t]he due process clause of the Fourteenth Amendment makes the First Amendment applicable to the states." Republican Party of Minnesota v. White, 416 F.3d 738, 748 (8th Cir. 2005) (citing McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 336 n. 1 (1995)). In order to state a claim for denial of access to the courts, an inmate must demonstrate that he incurred actual injury; in other words, the inmate must show that the alleged deprivations actually hindered his efforts to pursue a legal claim. Klinger, 107 F.3d at 617 (citing Lewis v. Casey, 518 U.S. 343 (1996)). This showing of prejudice is required of pretrial detainees, as well as prisoners. See Thomsen, 368 F. Supp.2d at 974 (citing Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993)).

Additionally, in order to survive a motion to dismiss, plaintiffs must allege in their access-to-courts claim that defendants' actions resulted in actual harm or actual injury, such as the loss or rejection of a nonfrivolous legal claim regarding sentencing or the conditions of confinement. See Chambers v. Gilmer, No. 06-2026, Fed.Appx. 469, 2007 WL 1040330 at *1 (8th Cir. April 09, 2007) ("Specifically with regard to his access-to-courts claim, defendants' alleged actions did not prevent Chambers from asserting

his rights in a lawsuit against the police officers who allegedly mistreated him, and Chambers did not allege the requisite actual injury from defendants' actions to state such a claim in any event."); Sikora v. Hopkins, No. 98-2033, 163 F.3d 603, 1998 WL 738327 at *1 (8th Cir. Oct. 23, 1998) (We agree that Sikora failed to state an access-to-courts claim because he failed to allege actual harm, . . .") (citations omitted).[14] Given that plaintiffs failed to allege in their Complaint any actual harm that resulted from defendants' alleged actions (e.g., impinging on their ability to bring a particular non-frivolous claim), plaintiffs have failed to state an access-to-courts claim.  Defendants' motion to dismiss should be granted as to their access-to-courts claims and the claims be dismissed without prejudice.

J.    **Telephone Access**

Plaintiffs claimed Commissioner Ludeman created a policy that resulted in the installation of a phone system which only allowed monitored, outgoing telephone calls at a fee in excess of 34 cents per minute.  See Complaint, ¶ (IV)(7).  Plaintiffs asserted that the fee charge is unreasonable and extortion and that the policy and phone system violated their First Amendment right to telephone access.  Id. Further, plaintiffs alleged that the phone system violated their Fourteenth Amendment rights under the Equal Protection Clause because patients civilly committed under Minn. Stat. § 254B as mentally ill and dangerous, are allowed incoming and outgoing telephone calls and are

---

[14]    The Eighth Circuit in Chambers and Sikora dismissed the complaints at the prescreening level.  In doing so, both cases cited to the Supreme Court's decision in Lewis, a case which was decided after a three-month bench trial, which required the plaintiffs to show or establish injury to make out an access-to-court claim.  518 U.S. at 349-350.  The Court notes that the Supreme Court did not address whether the claimants had to allege actual injury in their complaint.

allowed to purchase calling cards that provide telephone access for as little as 3 cents per minute.  Id.

### 1.    First Amendment Claim

Turning to their First Amendment claims, this Court finds that plaintiffs have the right to communicate with individuals outside of the Moose Lake facility and that the use of a telephone is merely one means of exercising this right.  See Valdez v. Rosenbaum, 302 F.3d 1039, 1047-48 (9th Cir. 2002) (finding that a restriction of a pretrial-detainee's access to a telephone did not violate the First Amendment); see also Benzel v. Grammer, 869 F.2d 1105, 1108 (8th Cir. 1989) ("Although in some instances prison inmates may have a right to use the telephone for communication with relatives and friends, prison officials may restrict that right in a reasonable manner, 'subject to rational limitations in the face of legitimate security interest of the penal institution.'") (quoting Hutchings v. Corum, 501 F .Supp. 1276, 1296 (W.D. Mo.1980)).

Nevertheless, plaintiffs do not have a First Amendment right to a specific rate for their telephone calls.  See e.g., Arsberry v. Illinois, 244 F.3d 558, 564 (7th Cir. 2001) (holding that exorbitant rates charged to institutionalized persons by telephone service provider with exclusive right to provide service to institution did not violate First Amendment); Johnson v. State of Cal., 207 F.3d 650, 656 (9th Cir. 2000), overruled on other grounds, 543 U.S. 499 (2005) (finding that although prisoners have a First Amendment right to telephone access, "[t]here is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls and the complaint alleges no facts from which one could conclude that the rate charged is so exorbitant as to deprive prisoners of phone access altogether."); Dotson v. Calhoun County Sheriff's

Dept., No. 1:07-CV-1037, 2008 WL 160622 at *3 (W.D. Mich. Jan. 15, 2008) (holding that it "is beyond dispute" that prisoners are not entitled to a specific rate for their telephone calls) (citation omitted); Boyer v. Taylor, 06-694-GMS, 2007 WL 2049905 at *9 (D. Del. July 16, 2007) (concluding that although prisoners may have a First Amendment right to reasonable telephone use, prisoners are not entitled to a specific rate for their telephone, especially where the complaint alleges no facts from which one could conclude that the rate charged is so exorbitant as to deprive prisoners of phone access altogether); Harrison v. Federal Bureau of Prisons, 464 F. Supp.2d 552, 555 (E.D. Va. 2006) (same).  Plaintiffs have made no allegation that they are precluded from making telephone calls given the rate charged.  Therefore, plaintiffs have failed to allege a constitutional violation under the First Amendment with respect to their telephone rate claim and this portion of their telephone access claim should be dismissed with prejudice.

Plaintiffs also complained that they are not allowed incoming calls and that their calls are monitored.  See Complaint, ¶ (IV)(7).  As stated previously, civilly committed individuals "'have a First Amendment right to telephone access, subject to reasonable security limitations.'"  Young v. Seling, No. 01-35697, 72 Fed.Appx. 657, 2003 WL 21920006 at *2 (9th Cir. Aug. 11, 2003) (quoting Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), citing Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986)).  Defendants' argued that the restrictions placed on plaintiffs' telephone use were reasonable under the test enunciated in Turner v. Safley, 482 U.S. 78, 89-91 (1987).  See Defs.' Mem. at p. 24.  In determining whether a prohibition on a constitutional right is reasonable under Turner a court is to consider four factors: (1) whether prohibiting an

inmate from exercising a constitutional right is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising the right; (3) what effect accommodation of the interest would have on guards, other inmates, and the allocation of prison resources; and (4) whether there are ready alternatives with which the prison could continue to serve its interest without impinging on constitutional rights.  See Turner, 482 U.S. at 89-90.

Assuming that Turner applies to the analysis of plaintiffs' First Amendment claims,[15] based on the facts currently alleged in the Complaint, this Court concludes that plaintiffs' First Amendment claims survive defendants' motion to dismiss.   This is because plaintiffs have stated sufficient facts to make out their claim and no facts have been developed to date by any party that address the four Turner factors.   As such, defendants' motion to dismiss plaintiffs' First Amendment claims that they are denied

---

[15]   "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."  Youngberg, 457 U.S. at 321-22; see also Senty-Haugen, 462 F.3d at 886.  Accordingly, this Court finds that the Turner analysis is appropriate for analyzing plaintiffs' First Amendment claims, given that Youngberg found that states have a duty to "provide reasonable safety for all residents and personnel within the institution" and "may not restrain residents except when and to the extent professional judgment deems this necessary to assure such safety."  Id. at 324; see also Senty-Haugen, 462 F.3d at 887 ("Moreover, federal courts are to give deference to state officials managing a secure facility, and Offender Program staff have a substantial interest in providing efficient procedures to address security issues.") (citations omitted); Ivey v. Ludeman, No. 05-2666 (JRT/FLN) 2006 WL 2786961 at *9 (D. Minn. Sept. 26, 2006)(Report and Recommendation adopted in part and deferred in part by District Judge John Tunheim) (analyzing plaintiff's First Amendment claims under Turner analysis on assumption it represents an appropriate standard to evaluate constitutional claims advanced by a person civilly committed as a sexual psychopathic personality or a sexually dangerous person under the Minnesota Commitment and Treatment Act).  In other words, Turner is consistent with Youngberg because it will not allow a Program detainee's right to be restricted unless there is a valid institutional reason for doing so.

incoming calls and all calls are monitored should be denied.

### 2. Equal Protection Claim

The basis of plaintiffs' Equal Protection claim is that they, as civilly committed sex offenders, are being treated differently from patients civilly committed under Minn. Stat. § 253B, as mentally ill and dangerous, who are allowed incoming and outgoing telephone calls and are allowed to purchase calling cards that provide telephone access for as little as 3 cents per minute.

As stated previously, in order to succeed on an equal protection claim, a claimant must prove that a state official has treated him differently from other similarly situated individuals, either by operation of a state law or regulation, or by a decision. See Bogren, 236 F.3d at 408. In the present case, this Court finds that "[p]ersons involuntary committed as mentally ill pursuant to Minn. Stat. § 253B.02, subds. 18(b) and 18(c) (2002), are not similarly situated to those individuals involuntarily committed as SDP or SPP[16] under Minn. Stat. § 253B.02, subds. 18(b) and 18(c) (2002), because the statutory criteria for the respective commitments are fundamentally different." McDeid v. O'Keefe, No. C0-03-177, 2003 WL 21525128 at *5 (Minn. Ct. App. Jul. 8, 2003). In addition, to the extent that the mentally ill and dangerous are housed in different facilities, this too would preclude them from being deemed "similarly situated" to plaintiffs.

---

[16] The terms "SPP and "SDP" refer to sexual psychopathic personalities and sexually dangerous persons, respectively.

Given that plaintiffs are not similarly situated to those persons civilly committed under Minn. Stat. § 253B, defendants' motion to dismiss with regards to plaintiffs' equal protection claim should be granted and the claim should be dismissed with prejudice.

**K.    Privacy Claims**

Plaintiffs alleged in their Complaint that North Unit Director Considine and South Unit Director Hattenberg, at the direction of Commissioner Ludeman, Program Director Erskine, Site Director Mooney, and Security Director Johnson, violated their Fourteenth Amendment right to privacy, as plaintiffs are forced to use communal showers and toilets with no expectation of privacy, even from staff, and are double bunked in cells too small for two people. See Complaint, ¶ IV(8).

Plaintiffs do have a due process right to bodily privacy under the Fourteenth Amendment. See Haberthur v. City of Raymore, Missouri, 119 F.3d 720, 723 (8th Cir. 1998) (citations omitted).   Nevertheless, defendants argued this claim should be dismissed because plaintiffs failed to describe the "communal" shower with detail in their Complaint.   See Defs.' Mem. at p. 20.   However, under the notice pleading contemplated by Fed. R. Civ. P. 8(a)(2), plaintiffs do not need to plead their privacy claim with particularity to survive the defendants' motion to dismiss.  It is sufficient for plaintiffs to state that they are subjected to "communal" showers and toilets and that they do not have any privacy from staff in this context.

Defendants also cited to Timm v. Gunter, 917 F.2d 1093 (8th Cir. 1990) for the proposition that plaintiffs have failed to state a claim.  In Timm, the Eighth Circuit ruled that given the particular facts in that case, opposite-sex surveillance of male prisoners, performed on the same basis as same-sex surveillance, was not "unreasonable" under

the Turner analysis.  917 F.2d at 1102.

Based on the facts currently alleged in the Complaint, this Court cannot conclude that plaintiffs' Fourteenth Amendment claim fail as a matter of law because no facts have been developed by any party that speak to the four Turner factors.  Hydrick, 500 F.3d at 1000.  As such, defendants' motion to dismiss should be denied.

Likewise, this Court cannot find that plaintiffs' claim as it relates to being double bunked in a small cell should be dismissed at this stage of the case.  Defendants argued that the Supreme Court in Bell held that the Constitution does not provide for a "one man, one cell" rule.  See Defs.' Mem. at p. 20.  While the Supreme Court concluded in the context of pretrial detainees, that there is no "one man, one cell" principle lurking in the Due Process Clause, the Supreme Court also acknowledged that "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause."  Bell, 441 U.S. at 541-42.  Unlike pretrial detainees, who are not usually subjected to certain cell conditions for long periods of time, plaintiffs, who are indefinitely confined, may be able to assert a viable due process claim for being double bunked in a small cell.  In any event, the two inmates per cell issue was decided in Bell after a record was developed for summary judgment.  Id. at 528.  Here, the Court does not have any facts before it to analyze plaintiffs' claim, such as the size of the room and how long plaintiffs have been double bunked.  Dismissal at this time is premature and the motion should be denied.

### L.     Procedural Due Process Access to Facility Claim

Plaintiffs alleged that North Unit Director Considine and South Unit Director Hattenberg, acting under the supervisory authority of Commissioner Ludeman, Program Director Erskine, Site Director Mooney, and Security Director Johnson, deprived plaintiffs of their access to freely move around the Annex without escorts, as Program detainees are not allowed to have access to MDOC inmates or guards.  As a result, plaintiffs claim that defendants are denying them access to the privileges afforded to all other civilly committed inmates including daily access to the gym, access to library services, the ability to communicate with other Program detainees, and free access to outside activities.  See Complaint, ¶ (IV)(9).  According to plaintiffs, their status is similar to what MDOC would classify as "Administrative Segregation."  Id.  Plaintiffs contend that they have a right to procedural due process before they are denied access to services afforded to all other civilly committed detainees, and that as they have a state-created liberty interest in their access levels, a denial of this right violates the Due Process Clause of the Fourteenth Amendment.  Id.

In evaluating the procedural due process claim, the Court must first determine whether plaintiffs have been "deprived of a protected liberty or property interest" that either arises form "the Due Process Clause [or] and the laws of the State."  Senty-Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006) (citations omitted).  If plaintiffs do "have a protected interest, we then consider what process is due by balancing the specific interest that was affected, the likelihood that the Offender Program procedures would result in an erroneous deprivation, and the Offender Program interest in providing the process that it did, including the administrative costs and burdens of providing

additional process." Id. (citing Mathews v. Eldridge, 424 U.S. 319, 332-35 (1976)).  The "most important mechanisms for ensuring due process are notice of factual basis leading to deprivation and fair opportunity for rebuttal."  Bradford v. Whitworth, No. 06-3095, 242 Fed.Appx. 369, 2007 WL 2694314 at *1 (8th Cir. Sep. 17, 2007) (citing Senty-Haugen, 462 F.3d at 886).  "A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures."  Senty-Haugen, 462 F. 3d at 886 (citing Parrish v. Mallinger, 133 F.3d 612, 615 (8th Cir. 1998)).

Defendants argued that plaintiffs' access claim should be dismissed because the restrictions alleged "are so de minimis that they do not implicate the Constitution." Defs.' Mem. at p. 18 (citing Senty-Haugen, 462 F. 3d at 885 n. 7).  However, that is not a determination that can be made as a matter of law based on the allegations of plaintiffs' Complaint.  Senty-Haugen and Bell, upon which the Eighth Circuit relied for its de minimis analysis, were decided on a fully developed record.  Accepting plaintiffs' allegations as true as this Court must do at this juncture of the case, plaintiffs have stated a claim for relief that survives defendants' motion to dismiss.

### M.   Sanitation Claims

Plaintiffs also asserted that defendants have failed to provide plaintiffs with adequate conditions of confinement and have exposed them to potentially severe health risks. See Complaint, ¶ (IV)(10).  In particular, plaintiffs complain that the communal showers and bathroom are only cleaned once a day and that urine and fecal matter is frequently found on the bathroom floor and toilet seats; no sanitizer is readily available to disinfect the floors and toilet seats; dining room tables are not adequately sanitized

prior to the services of each meal; the mops and brooms used to clean the bathrooms and showers are also used to clean cells, thereby spreading germs to their cells; and the towels, blankets and cleaning rags are washed in one unit washer and that the water does not reach a temperature needed to properly sanitize them.  Id.  According to plaintiffs, these concerns have been repeatedly raised with Program staff and they have been ignored.  Id.  Plaintiffs claim the actions of the Program'' staff constitutes deliberate indifference, and that civilly committed patients have a right under the Fourteenth Amendment not to be exposed to unsanitary conditions.  Id.

Civilly committed individuals retain a fundamental interest in their safety and personal security, albeit not an absolute right, under the Due Process Clause.  See Youngberg, 457 U.S. at 319-20.  This interest includes a clearly established right to not be exposed to unsanitary conditions.  See Hydrick, 500 F.3d at 997 (citing Anderson v. County of Kern, 45 F.3d 1310, 1314-15 (9th Cir. 1995); Youngberg, 457 U.S. at 315-16 (citations omitted)).  Because, under the Fourteenth Amendment, civilly committed detainees "are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment,' we apply the identical deliberate-indifference standard as that applied to conditions-of-confinement claims made by convicts."  Crow v. Montgomery, 403 F.3d 598, 601-02 (8th Cir. 2005) (pertaining to pretrial detainees) (quoting Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir. 2003), quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)); see also Sain v. Wood, --- F.3d ----, 2008 WL 80643 at *6 (7th Cir. 2008) (citations omitted) (concluding that the protection afforded to a civilly committed detainee by the Due Process Clause of the Fourteenth Amendment has been defined as at least as extensive as that afforded to

prisoners by the Eighth Amendment); Hydrick, 500 F.3d at 998 ("Thus, the Eighth Amendment still provides a floor for the level of protection that SVPs must receive under the Fourteenth Amendment, and because the contours of the Eighth Amendment are more defined, Eighth Amendment jurisprudence may provide helpful guidance as to the standards to be applied."); Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996) (finding that Youngberg establishes that the due process rights of the civilly committed are "at least as extensive" as the Eighth Amendment "rights of the criminally institutionalized," and as such, "relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed."). Therefore, plaintiffs "must show, (1) objectively, that the conditions of [their] confinement 'posed a substantial risk of serious harm' and, (2) subjectively, that the defendants 'actually knew of but disregarded, or were deliberately indifferent to, [plaintiffs] health or safety.'" Grayson v. Ross, 454 F.3d 802, 808 (8th Cir. 2006) (quoting Crow, 403 F.3d at 602).

Defendants argued that allegations of unsanitary conditions do not arise to constitutionally significant level, but were rather amount to de minimis impositions on plaintiffs. See Defs.' Mem. at p. 19. Defendants cite to Smith v. Copeland, 87 F.3d 265 (8th Cir. 1996), Goldman v. Forbus, 17 Fed. Appx. 487, 2001 WL 838997 (8th Cir. 2001), and White v. Nix, 7 F.3d 120 (8th Cir. 1993) in support of this proposition. However, none of these cases were decided in the context of a motion to dismiss, and in any event, the fact patterns in those cases were different than those presented by plaintiffs here. In Smith, the Eighth Circuit found that the defendants were entitled to summary judgment where the plaintiff had been subjected to an "overflowed toilet in his

cell for four days." Smith, 87 F.3d at 269.  In coming to this conclusion, the court found that not every "overflowed toilet in a prison amounts to a constitutional violation." Id. at 268.  However, the court also noted it had found constitutional violations where inmates were forced to work without protective gear "in a shower of human excrement"; had ordered prisons to provide protective gear and to warn of the dangers of working in AIDS-contaminated waste; and found a violation where an inmate was forced to endure a cell covered with filth and human waste for two full years.  Id. at 269 (citations omitted).  According to the Eighth Circuit, "the length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis" and that while conditions such as a filthy cell may be tolerable for a few days, they may be intolerably cruel for weeks or months. Id. (citations omitted).

In Goldman v. Forbus, after a two-day evidentiary hearing, the district court found that arrestee who had spent two nights in a two-man cell with two other men, then in an eight-man cell with ten other men, slept on a mattress on the floor, and due to the size of the cell, was forced to position his mattress near the toilet so that urine was sprinkled on him when his cellmates used the toilet for two nights, did not suffer unconstitutional punishment. 2001 WL 838997 at *1.  Relying on Smith, the Eighth Circuit affirmed the decision, observing that "[p]laintiff's stay in each cell was brief, he was allowed to leave the cells during the day, the record does not show that he suffered any physical harm from being housed in either cell, and when he complained about not having a bed, he was moved to a cell where he had one."  Id.

In White v. Nix, a case that went to trial, the Eighth Circuit concluded that the evidence showed that the conditions of the plaintiff's confinement did not constitute

cruel and unusual punishment so as to deprive him of his Eighth Amendment rights, since there was no evidence that the cell was covered with a mixture of dried human fecal matter and food as plaintiff contended and because he was provided with cleaning materials in order to correct the alleged unsanitary conditions. 7 F.3d at 121. Accordingly, the Eight Circuit concluded that the plaintiff was unable to show either that he was deprived of the "minimal civilized measure of life's necessities." Id.

There is no dispute that "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989) (citations omitted).  In addition, exposure to human waste may constitute cruel and unusual punishment. See Gates v. Cook, 376 F.3d 323, 341 (5th Cir. 2005) (citing Tokar v. Armontrout, 97 F.3d 1078, 1082 n. 4 (8th Cir. 1996)).  Moreover, the conditions of plaintiffs' confinement are not inherently short-term like those of the arrestees and detainees in the cases cited by defendants.  Rather, plaintiffs allege a consistent exposure to human waste over a possibly significant period of time.

Defendants' motion fails with respect to plaintiffs' sanitation claims because taking the allegations of the Complaint at face value, plaintiffs have stated a viable claim for denial of due process.  See Johnson v. Head, No. L-05-14, 2006 WL 1342814 at *4 (S.D. Tex. May 15, 2006) ("Petitioner claims that there is only one broom used to clean the 'bath and shower areas, common room area, and personal living area, collectively spreading filth.' Petitioner claims that blankets are laundered and changed only once every three months. Finally, Petitioner claims that many showers have poor drainage and that inmates are forced to stand in 'a pool of filthy water containing the germs of

those who showered before him.' If Petitioner can prove that these policies expose him to a substantial risk of serious harm, then Petitioner is entitled to relief.").  In short, while defendants may in due course succeed in establishing that the conditions plaintiffs allege do not constitute a violation of due process, given the posture of this case, this Court cannot conclude as a matter of law that the conditions that plaintiffs describe in their Complaint are de minimis.  Plaintiffs should be afforded the opportunity to present additional facts in support of their claims.  Defendants' motion to dismiss plaintiff sanitation claims should be denied.

**N.    Visitor Policy Claim**

Plaintiffs' alleged that the conditions at the Annex violate the Equal Protection Clause of the Fourteenth Amendment, as they are subjected to a policy that mirrors that of the MDOC, where potential visitors are required to go through a criminal background check and obtain prior approval to visit Program detainees housed at the Annex.  See Complaint, ¶ (IV)(11).  This process takes at least 30 days from the receipt of the application, and potential visitors are not allowed to visit if they do not pass the background check.  Id.  Plaintiffs maintain that this condition of confinement at the Annex is more restrictive and punitive than the requirements to which all other Program detainees are subjected and violates the Equal Protection Clause under the Fourteenth Amendment and constitutes punishment.  Id.

Again, defendants' basis for dismissal on their Rule 12(b)(6) motion is that plaintiffs were not similarly situated to other civilly committed individuals and that the visitor policy has a rational basis given plaintiffs' close proximity to prisoners, in

particular its fear that contraband will pass from patients to prisoners.  <u>See</u> Defs.' Mem. at p. 34.

As set forth in Section III.D.2 of this Report and Recommendation, <u>supra</u>, given that the plaintiffs' housed in the Annex are not similarly situated to other Program detainees housed in different faculties around the State, their Equal Protection claims pertaining to Annex's visitor policies should be dismissed with prejudice.

**O.**   **<u>Whether Defendants are Entitled to Qualified Immunity</u>**

Defendants asserted that even if this Court were to conclude that plaintiffs' Complaint states a claim for relief, the Court should dismiss the Complaint under the doctrine of qualified immunity, because the alleged misconduct did not violate clearly established constitutional rights about which a reasonable person would have known. <u>See</u> Defs.' Mem. at p. 35.

"'Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Winters v. Adams</u>, 254 F.3d 758, 766 (8th Cir. 2001) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  "The doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'"  <u>Bagby v. Brondhaver</u>, 98 F.3d 1096, 1098 (8th Cir. 1996) (quoting <u>Ludwig v. Anderson</u>, 54 F.3d 465, 470 (8th Cir. 1995); <u>Malley v. Briggs</u>, 475 U.S. 335 (1986)); <u>see also</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 205 (2001) (stating that "[i]f the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense").  "This accommodation for reasonable error exists because 'officials should

not err always on the side of caution' because they fear being sued." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Davis v. Scherer, 468 U.S. 183, 195 (1984)). "The obvious function of the qualified immunity rule is to excuse an officer who makes a reasonable mistake in the exercise of his official duties." Edwards v. Baer, 863 F.2d 606, 607 (8th Cir. 1988).

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." Wilson v. Layne, 526 U.S. 603, 614 (1999) (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)). "The lynchpin of qualified immunity is the public official's objective reasonableness." Bagby, 98 F.3d at 1098 (emphasis in original).

The applicability of the qualified immunity doctrine is a question of law and, when qualified immunity is raised as a defense, courts analyze the application of qualified immunity by first addressing "whether the allegations amount to a constitutional violation, and then, whether that right was clearly established." Sanders v. City of Minneapolis, Minnesota, 474 F.3d 523, 526 (8th Cir. 2007) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).). If allegations amount to a constitutional violation, then the Court must determine whether the officials knew or should have known that the right was clearly established, and whether the officials knew or should have known that their conduct violated that right. See Tyler v. Barton, 901 F.2d 689, 691 (8th Cir. 1990) (applying these factors to prison officials).

To prevail on a motion to dismiss, "defendants must show that they are entitled to qualified immunity on the face of the complaint." Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005) (citation omitted); see also Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996), cert. denied, 519 U.S. 1149 (1997) (quoting Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995)) ("We note that 'qualified immunity is an affirmative defense,' and 'it will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.'").

Here, plaintiffs have alleged numerous constitutional violations that this Court has determined cannot be dismissed for failure to state a claim. Having met the first prong to defeat a claim of qualified immunity, the Court must then determine whether or not the constitutional right was clearly established – that is, whether the defendants knew or should have known that the right was clearly established. However, that determination "is a fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 200; Ngo v. Storlie, 495 F.3d 597, 602 (8th Cir. 2007) (same) (quoting Samuelson v. City of New Ulm, 455 F.3d 871, 875 (8th Cir. 2006)).[17]

---

[17]   Defendants suggest that even if the Court were to find that defendants' alleged conduct violated plaintiffs' constitutional rights, plaintiffs still could not establish that these rights were "clearly established" as the law in this area provides little guidance to them. See Defs.' Mem. at p. 37. A similar argument was presented in Hydrick, 500 F.3d at 989 ("Before we consider the Plaintiffs' claims individually to determine whether the claims were clearly established in 1998, we address a threshold question that applies to the Plaintiffs' claims more generally. The Defendants argue, as a broad proposition, that damages are not appropriate in this suit because the law applicable to [sexually violent predators] is still evolving."). The appellate court rejected this proposition stating:

> [T]here are two bodies of law from which we might draw
> "clearly established" law for qualified immunity purposes:

Consequently, where no record has been developed, much less presented to this Court, this Court cannot make a determination that qualified immunity applies or does not apply on the face of the Complaint.  As the Ninth Circuit observed in Hydrick, supra:

> [A] motion to dismiss on qualified immunity grounds puts the court in the difficult position of deciding "far-reaching constitutional questions on a non-existent factual record." (citation omitted). While "government officials have the right ... to raise ... qualified immunity defense on a motion to dismiss, the exercise of that authority is not a wise choice in every case." (citation omitted). We find that applicable here. The policy justifying qualified immunity motions at this stage is to protect officers against the burden of discovery and pretrial motions. See Behrens v. Pelletier, 516 U.S. 299, 308, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).

500 F. 3d at 985.

For all of these reasons, this Court denies defendants' motion to dismiss the Complaint based on qualified immunity.

**P.   Conclusion**

At the end of the day, defendants may well establish that their conduct does not violate the various constitutional guarantees afforded sex offenders civilly committed to the Minnesota Sex Offender Program or that they are entitled to qualified immunity for their conduct.   But this Court cannot make such a determination based solely on plaintiffs' Complaint.  Like most of the cases that address the rights of prisoners, pre-trial detainees, civilly committed persons, and civilly committed sex offenders, a record

---

> first, where the [sexually violent predators] claim a violation of a right that is clearly established even in the prison context, and second, where the [sexually violent predators] claim a violation of a right that is clearly established for all civilly detained persons.

Id. at 990.

needs to be presented to the court through such vehicles as an evidentiary hearing, affidavits presented in connection with a motion for summary judgment, or trial.  Thus, to the extent that this Court has determined that plaintiffs have stated a cause of action, plaintiffs should be afforded the right to conduct discovery and submit their own version of the facts to the Court before a dispositive ruling on their claims can be made.  See Ivey, 2006 WL 2786961 at *5 ("The issue is not 'whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.'") citing Scheurer v. Rhodes, 416 U.S. 232, 236 (1974).

## IV.   MOTION TO STRIKE

Plaintiff have moved pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike portions of defendants' memorandum of law and accompanying exhibits, which described the background of several of the plaintiffs.  The basis for plaintiffs' motion is that this information is immaterial and has no relevance to the issues presented in the motion and the exhibits present facts outside of the Complaint.  See Plaintiffs' Motion to Strike [Docket No. 35] at p. 1.

The proper vehicle for making such arguments is in plaintiffs' response to defendants' motion to dismiss – it is not a basis for striking portions of defendants' memorandum of law in support of their Motion to Dismiss.  Under Federal Rule of Civil Procedure 12(f), a court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Pleadings are defined by Federal Rule of Civil Procedure 7 as "a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint . . . and a third-party answer. . . ." Fed.R.Civ.P. 7(a).

A motion, such as a motion to dismiss and its related materials, is not a pleading for the purposes of Rule 12(f) and therefore, Rule 12(f) does not apply.  See Watkins v. New Castle County, 374 F.Supp.2d 379, 394 (D. Del. 2005) ("Rule 12(f) applies only to pleadings, not motions and related documents.") (string citation omitted); Murphy v. Yates, CIV.A. 05-2552, 2005 WL 2989630 at *1 (E.D. Pa. Aug. 08, 2005) ("A motion, such as Defendant's Motion to Dismiss, is not a pleading. Consequently, Rule 12(f) does not apply to Defendants' Motion"); Wright v. Onembo, No. CIV.A.99-4778, 2000 WL 1521567 at *1 n. 3 (E.D. Pa. Oct. 4, 2000) ("Mr. Wright's 12(f) motion seems improper, however, insofar as Federal Rule of Civil Procedure 7(a) apparently defines an exclusive list of "pleadings" that does not include motions under 12(b). . . ."); Hrubec v. National R.R. Passenger Corp., 829 F. Supp. 1502, 1506 (N.D.Ill.1993) (Aspen, J.) (motion to strike and memorandum in support thereof are not "pleadings"); EEOC v. Admiral Maintenance Svc., 174 F.R.D. 643, 646 (N.D. Ill. 1997) (affidavits or statements of undisputed facts, if "integral parts of the motion," cannot be stricken under Rule 12(f)).

Therefore, because motions to strike are not properly directed to motions to dismiss and their supporting materials, plaintiffs' motion to strike Docket No. 253 should be denied.

## **RECOMMENDATION**

For the reasons set forth above and based on all the files, records, and proceedings herein, IT IS RECOMMENDED that:

1.     Defendants' Motion to Dismiss [Docket No. 31] be **GRANTED** in part and **DENIED** in part.  Specifically, it is recommended that:

a.      Defendants' Motion to Dismiss be **GRANTED** as it relates to the following:

(i)     All Equal Protection claims asserted in the Complaint;

(ii)    Plaintiffs Beaulieu's and Yazzie's claim that they were subjected to strip searches upon arrival at the Annex in retaliation for filing a lawsuit;

(iii)   Plaintiffs' procedural due process claim as it relates to 20-inch televisions sent out from the Annex; and

(iv)    Plaintiffs' First Amendment telephone access claim related to the alleged excessive rate charged for telephone calls.

These claims should be dismissed with prejudice.

b.      Defendants' Motion to Dismiss be **GRANTED** as it relates to plaintiffs' access-to-courts claim.  This claim should be denied without prejudice.

c.      Defendants' Motion to Dismiss be **DENIED**, as to the remainder of the Complaint.

2.      Plaintiffs Mike O'Donnell and Aaron Jones' Requests that this Court dismiss their action against defendants without prejudice [Docket Nos. 42, 44] be **GRANTED**.

3.      Plaintiffs' Motion to Strike [Docket No. 35] be **DENIED**.

Dated:          February 7, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 26, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to

3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.